1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| FRASER ET AL., | No. 2:13-cv-00520-TLN-DAD |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| WAL-MART STORES, INC., | |
| Defendant. | |

This matter is before the Court pursuant to Plaintiffs Fraser et al.'s ("Plaintiffs") Motion for Class Certification. (ECF No. 15.) Defendant Wal-Mart Stores, Inc. ("Defendant") filed an opposition to Plaintiffs' motion. (ECF No. 16.) For the reasons discussed below, the Court GRANTS Plaintiffs' Motion for Class Certification.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Amy Fraser and Paula Haug submitted a Memorandum of Points and Authorities in Support of their Motion for Class Certification. (ECF No. 15-1.) Plaintiffs allege that Defendant violated the Song-Beverly Credit Card Act of 1971 Section 1747.08(a)(2) ("Section 1747.08(a)(2) of the California Civil Code") by requesting and recording customers' ZIP codes in conjunction with credit card transactions. (ECF No. 16 at 1.)

Section 1747.08(a)(2) of the California Civil Code provides that:

1

> (a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following:
> (2) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.

Cal. Civ. Code §1747.08(a)(2).

Plaintiffs contend that Defendant has a company policy where, in each of its California retail stores, credit card customers are asked or even sometimes required to input their ZIP codes into the electronic pin pad device adjacent to the cashier at the checkout stand. (ECF No. 15-1 at 4.) Defendant acknowledged that it did request and record the ZIP codes from those customers using an American Express credit card for purchases exceeding $50. (ECF No. 15-1 at 4.) Furthermore, Defendant admits to requesting and recording the ZIP codes from customers using Discover credit cards for transactions exceeding $200. (ECF No. 15-1 at 4.)

Plaintiff Haug further alleges that she utilized a Visa credit card on multiple occasions at Defendant's stores and was requested to provide her ZIP code during those transactions as well. Defendant denies that it requested and recorded the ZIP codes of its customers utilizing a Visa credit card.

Plaintiff Haug alleges that she entered into multiple credit card purchase transactions at Defendant's stores in California where she was required to input her ZIP code. (ECF No. 15-1 at 4.) When Defendant asked Plaintiff Haug to identify all of the credit card transactions she based her claim on, she pointed to the following:

> **Visa:** (1) a November 17, 2012 transaction for $64.61; (2) a December 5, 2012 for $35.37; (3) a December 7, 2012 for $75.08; and (4) a December 16, 2012 for $30.14.
> **AmEx:** (1) a December 1, 2012 transaction for $85.09; (2) a September 3, 2013 for $54.05; and (3) a September 7, 2013 for $60.36.

(ECF No. 16 at 3.) However, in the billing statements that Plaintiff Haug produced, the December 7, 2012 transaction does not appear. (ECF No. 16 at 4.) As for the American Express

transactions, Plaintiff Haug presented no receipt or account statement for the December 1, 2012, transaction. Furthermore, the two September, 2013, American Express transactions mentioned occurred seven months after Plaintiff Haug commenced this action. (ECF No. 16 at 4.)

Plaintiff Fraser points to two American Express credit card transactions where the credit card pin pad "requested [her] to confirm the transaction amount and to input [her] ZIP code." (ECF No. 16 at 5.)

Defendant explains that in order to allow credit cards as a form of payment, Defendant must enter into acceptance agreements with credit card companies. (ECF No. 16 at 5.) In furtherance of preventing criminal activity, many credit card companies have developed ZIP code verification protocols that systematically and instantaneously match the ZIP code entered at the point of sale with the billing ZIP code on the credit card account. (ECF No. 16 at 5.) American Express has such a program, which is included in Defendant's agreement with American Express. (ECF No. 16 at 5.) Following this agreement, Defendant is contractually obligated to provide American Express with the cardholder's billing ZIP code during the authorization process. (ECF No. 16 at 6.) Defendant has no such agreement with Visa. (ECF No. 16 at 6.) Defendant uses a customer activated terminal ("CAT") whenever a customer pays with a credit card. (ECF No. 16 at 6.) When a card is swiped, the CAT prompts the customer to provide any additional information needed depending on the card type. (ECF No. 16 at 6.) For American Express cards, in transactions equal to or greater than $50, the CAT is programmed to require a 5-digit ZIP code from the customer. (Decl. of Matt Howarter ("Howarter Decl."), ECF No. 16-3 ¶ 3.) Defendant claims that the CAT system is not programmed to request ZIP codes in Visa transactions because the Wal-Mart and Visa acceptance agreement does not require it. Howarter Decl. (ECF No. 16-3 ¶ 4.)[1]

---

[1] In response to Plaintiffs' allegations that Defendant violated Cal. Civ. Code § 1747.08(a)(2), Defendant points to Cal. Civ. Code § 1747.08(c)(3)(A), which provides that personal identification information may be collected if the merchant accepting the credit card "is contractually obligated to provide personal information in order to complete the credit card transaction." (ECF No. 16 at 12, *citing to* Cal. Civ. Code § 1747.08(c)(3)(A)). Defendant's credit card acceptance agreement with American Express requires that it transmit to American Express the cardholder's ZIP code for certain transactions in order to authenticate the cardholder's identity. This argument is misplaced and does not speak to class certification. Therefore, the Court does not address it at this time

In the current motion, Plaintiffs move to certify the following class pursuant to Federal Rule of Civil Procedure ("FRCP") 23(a) and 23(b)(3):

> All persons in California whom Defendant requested and recorded personal identification information in conjunction with a credit card purchase transaction at a California retail store during the period of time beginning January 29, 2012 and continuing through the date of trial (the "Class").

(ECF No. 15-1 at 1.)

## II.  LEGAL STANDARD

The legal standard to obtain class certification is found under FRCP 23.  A class action may be maintained only if all four prerequisites of FRCP 23(a) are met along with at least one of the requirements of subpart (b).  *Blake v. Arnett*, 663 F.2d 906, 912 (9th Cir. 1981).  In deciding whether to certify a class, a district court "will resolve factual disputes by a preponderance of the evidence and make findings that each Rule 23 requirement is met or is not met, having considered all relevant evidence and arguments presented by the parties."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3rd Cir. 2008).

## III.  ANALYSIS

*A.  FRCP Rule 23(a)*

The four requirements of FRCP Rule 23(a) are presented as the following:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

The Court will address each prerequisite individually.

    i.    <u>Numerosity of Class</u>

Rule 23(a)(1) specifies that class action is appropriate where the class is so numerous that joinder of all members is impracticable.  Impracticability does not mean impossibility, but rather

4

the focus is on the "difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir. 1964) (*citing to Advertising specialty Nt. Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)). Although the numerosity requirement does not focus exclusively on the number of members in the potential class, case law does suggest that very large numbers may be considered impracticable.[2]

Here, Plaintiffs are defining the class as all persons in California whom Defendant requested and recorded personal identification information during a credit card transaction. Although Defendant does not acknowledge that this was done with VISA cards, Defendant does admit to recording ZIP codes from American Express cardholders. (ECF No. 15-1 at 8.) The size of the class is estimated to exceed 100,000 individuals. (Decl. of James M. Lindsay in Support of Motion for Class Certification, ECF No. 15-2 at ¶ 5). Joinder of this large number of individuals would cause difficulties and inconvenience for the various parties, as well as the court, and is therefore impracticable.

In addition, under the numerosity requirement, the class must be adequately defined and clearly ascertainable. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). Here, the class meets this standard. Plaintiffs adequately defined the class.[3] Furthermore, given the class definition, Defendant should have a record of all the potential class members because they requested and recorded their information. There is no indication that class membership cannot be readily determined here from Defendant's records. Thus, the class is clearly ascertainable and meets the numerosity requirement.

    ii.    <u>Commonality of questions of law and fact</u>

The second prerequisite for class certification is that there must be a common question of law or fact to the class. Fed. R. Civ. P. 23(a)(2). The class members must share a "common

---

[2] The courts provide no strict number, but when a class is very large joinder is typically impracticable. *See Gen. Tel. Co. of the NW. v. EEOC*, 446 U.S. 318, 330 (1980) (suggesting 15 is too few); *Hayes v. Wal-Mart Stores, Incorporated*, 725 F.3d 349, 357 (3d Cir. 2013) (presuming numerosity at 40); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (same).

[3] The class definition once again is: "all persons in California whom Defendant requested and recorded personal identification information in conjunction with a credit card purchase transaction at a California retail store during the period of time beginning January 29, 2012 and continuing through the date of trial." (ECF No. 15-1 at 1.)

contention of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). The commonality requirement is generally satisfied where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *See LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985). Even just one single question common to the class members will satisfy this requirement. *Wal-Mart*, 131 S. Ct. at 2562.

Here, the common question is whether Defendant violated Section 1747.08 of the California Civil Code by requesting and recording personal identification information during credit card transactions. (ECF No. 15-1 at 1.) The class members maintain that Defendant had a common practice or policy in California stores of requesting and recording ZIP codes from class members in conjunction with their credit card purchase transactions. The class members all share this common contention. The legality of Defendant's conduct will determine the outcome of all of the class members' claims. Therefore, the second prerequisite is met.

### iii. Typicality of the claims and defenses

The third prerequisite is that the claims or defenses of the representative parties must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has held that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). Typicality does not necessitate completely identical claims, but rather the focus is whether the class representative's claims have the same essential characteristics of the class members. *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Here the class representatives allege that they experienced the same exposure to Defendant's common practice of requesting and recording customers' ZIP codes when they used credit cards. The representatives' claims are the same as the class members' claims, therefore the typicality requirement is met.

/ / /

    iv. <u>Representative</u>

  The final prerequisite under FRCP 23(a) is that the representative parties must be able to fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  To make this determination, the Ninth Circuit proposed two questions for a court to ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

  There is no evidence of a conflict of interest here between Plaintiffs and the class.  Each potential class member here claims the same problem: they were exposed to Defendant's alleged violation of Section 1747.08(a)(2).  They all have essentially identical claims.

  Furthermore, there is no evidence that the representative plaintiff and their counsel will not prosecute the action vigorously.  The Ninth Circuit has stated that although there are no fixed standards in determining vigor, one factor to consider is the competency of class counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).  The Court should also consider "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class…."  Fed. R. Civ. P. 23(g)(1)(C)(i).

  There is no evidence that Lindsay Law Corporation will not prosecute the action vigorously.  Furthermore, there is adequate evidence that the class counsel is competent, given its experience in consumer class actions.  (*See* Lindsay Decl., ECF No. 15-2 at ¶ 6.)  Therefore, the final prerequisite of FRCP 23(a) is met.

  *B.  FRCP 23(b)*

  In addition to meeting all the four prerequisites of 23(a), a class action must also meet one of the three requirements of FRCP 23 (b).  *Blake*, 663 F.2d at 912.  Plaintiffs seek class certification pursuant to FRCP 23(b)(3) which states:

    (3) the court finds that the questions of law or fact common to

>class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>(D) the likely difficulties in managing a class action.

      i.    <u>Predominance of Common Questions of Law or Fact</u>

The Rule 23(b)(3) predominance test assesses whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997). A court should look to the common questions because "when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). The common question here is whether Defendant violated Section 1747.08(a)(2) of the California Civil Code by requesting and recording personal identification information.

Defendant argues that there are dissimilarities within the proposed class that should be considered. (ECF No. 16 at 10.) Defendant explains that their defenses may vary as to each class member based upon the particular circumstances of their transaction. (ECF No. 16 at 10.) Defendant points to California Civil Code §1747.08(c)(3)(A) as a defense. (ECF No. 16 at 11.) This section provides that personal information may be collected if the merchant is "contractually obligated to provide PII [(Personal Identification Information)] in order to complete the credit card transaction." Cal. Civ. Code §1747.08(c)(3)(A). This defense will be common to many of the class members, specifically those using American Express credit cards.[4] Therefore, the Court

/ / /

---

[4] As discussed in the factual background section, Defendant and American Express have a credit card acceptance agreement which requires that Defendant transmit to American Express the cardholder's ZIP code for certain transactions in order to authenticate the cardholder's identity. (ECF No. 16 at 12.)

8

disagrees with Defendant and finds that Defendant does not need to address each class member individually.

Defendant further contends that Plaintiffs have offered no evidence to prove that they are "cardholders" under the Song Beverly Credit Card Act and that the inclusion of persons in the class who are not "cardholders" is a dissimilarity within the proposed class which should preclude certification. (ECF No. 16 at 11.) Defendant did not challenge the class definition at the pleading stage but now argues that the class definition is too broad and might include persons who utilized a business card which would exclude them from privacy protection under the Song-Beverly Credit Card Act. (ECF No. 16 at 11.) Plaintiffs respond to this argument by explaining that classes cannot be defined to anticipate every unannounced affirmative defense a Defendant may want to forward. (ECF No. 20 at 8.) The Court agrees with Plaintiffs' response. Perhaps, in the process of litigation there will be evidence of class members using business cards, however, at this time there is no evidence of this.

The Court also acknowledges a recent decision in the Southern District of California where a class was decertified in a case with similar facts to the present one. In *Yeoman v. Ikea U.S.A. W., Inc.*, No. 11-CV-00701-BAS BGS, 2014 WL 6865699, at *1 (S.D. Cal. Dec. 4, 2014) Plaintiffs alleged that Ikea instituted a process to capture ZIP codes from customers in California at the time a customer paid for an item. The ZIP codes were recorded in transaction logs. *Id.* at *2. The court decertified the class relying on the fact that the plaintiff failed to prove the existence of a uniform policy of requesting and recording ZIP codes that was uniformly applied or followed. *Id.* at *6. There were some unknowns and differences among the various class members' transactions. For example, customers who went through the self-check kiosks were clearly notified by a large button and a voice prompt that providing a ZIP code was voluntary and thus not required to complete the transaction. *Id.* at *2. Furthermore, cashiers at Ikea were taught that customers were not required to provide ZIP codes and cashiers were instructed on how to circumvent entry of a ZIP code (by pushing "00000".) *Id.* at *2. In addition, Ikea explained that the ZIP codes that were acquired were highly unreliable; they included ZIP codes that were non-

9

existent. *Id.* There was no way to tell from the transaction logs whether a customer had gone through a self-check kiosk at some point and knew that providing the information was voluntary. *Id.* at *3. Nor was there any way to tell whether the ZIP code recorded was actually the customer's ZIP code. *Id.* The court found that it was appropriate to decertify the class given the clear lack of available class-wide proof and common answers, as well as the persistence of individual questions. *Id.* at *4. The court determined that there was not a common answer to the essential threshold question of whether requests for ZIP codes were made to each customer. *Id.* at *6. Furthermore, the court explained that a class action is only superior where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Id.* at *6, *citing to Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996). The court concluded that individual trials would be needed to decide the question of whether requests for personal identification information were in fact made to each class member and the circumstances of any requests (for example, whether customers knew it was voluntary or not). *Id.* at 6. Individual trials would be needed to decide the ultimate question of whether there was a violation of the Song Beverly Credit Card Act. Therefore, the court found that individual issues predominated and thus prosecution of the action as a class action is not superior to individual actions. *Id.* at 7.

The factors the court considered in *Yeoman* do not exist in the instant case. There does not appear to be the same persistence of individual questions. There is no evidence that Defendant provided any training to its cashiers on how to circumvent the entry of ZIP codes, or any evidence that customers were told providing this information was voluntary. Furthermore, there is no mention of self-checkout kiosks which clearly alerted customers that providing a ZIP code was voluntary. There is nothing to suggest that the individual transactions here were dissimilar.

Plaintiffs are claiming a common policy by Defendant of requesting and recording ZIP codes during credit card transactions. Defendant acknowledges doing so for American Express credit card transactions exceeding $50 and Discover card transactions exceeding $200. However,

1  Defendant argues that it did not do so with Visa cards.  Plaintiffs dispute this contention and
2  allege that Defendant requested and recorded ZIP codes for all three credit card types.  Plaintiff
3  Haug points to specific instances where she used a Visa credit card and was required to input her
4  ZIP code in order to complete the transaction.
5        There does not appear to be dissimilarities between the various transactions, nor is there
6  the need to ask each individual member specific questions about their particular transaction.
7  There remains the common question of whether or not customers were requested and required to
8  provide their ZIP code when using a credit card.  This question predominates over any individual
9  issue, and the Court finds that the present case differs from the Southern District court case.
10        Despite Defendant's arguments, the Court finds that all the class members are alleging the
11  same conduct by Defendant and the same common policy.  The common question the class
12  members share is a significant aspect of the case and can be resolved in a single adjudication.
13  Therefore, the first part of Rule 23(b)(3) is met.

      ii.    <u>Superiority of Class Action</u>

15        Federal Rule of Civil Procedure 23(b)(3) provides several factors to determine whether a
16  class action is the superior method for handling the claim when compared to other potential
17  methods.  The Court will address each in turn below.

      *a.  Interest in individual litigation*

19        The first consideration is whether the class members have any interest in individually
20  controlling the prosecution.  There is no indication that any individual class member here would
21  want to pursue litigation individually.  The aggregate damages may be large, but each class
22  member's individual recovery will most likely be small.  With litigation costs being high, and the
23  individual rewards small, it is unlikely that individual class members would have any desire to
24  pursue prosecution independently.

      *b.  Litigation already commenced*

26        The next factor addresses whether any litigation concerning the controversy has already
27  begun by any class members.  Plaintiffs indicate that they are unaware of any other actions

11

1  pending against Defendant alleging violations of Section 1747.08 other than the current action.
2  (ECF No. 15-1 at 13.)  The Court is also unaware of any evidence that other litigation has
3  commenced involving the Plaintiffs and Defendant.

4      *c.  Desirability of particular forum*

5  The third factor to consider under FRCP 23(b) is the desirability of litigating in this
6  particular forum.  Defendant does business in this District and has removed the action to this
7  Court.  (ECF No. 15-1 at 13.)  Defendant does not dispute the desirability of litigating the action
8  in this forum.  This Court has jurisdiction over the action and there is no evidence to suggest that
9  this Court is not the appropriate forum.

10     *d.  Manageability of the class action*

11 The final factor involves the difficulties of managing a class action.  Plaintiffs argue that
12 there are no significant issues regarding the manageability of Plaintiffs' claims as a class.  (ECF
13 No. 15-1 at 13.)  Plaintiffs explain that given the number and importance of the common
14 questions that the class members share, the adjudication of class claims is much more efficient
15 than pursuing the claims individually.  (ECF No. 15-1 at 14.)  Defendant contends that Plaintiffs
16 failed to indicate how class membership will be determined or how notice will be given.  (ECF
17 No. 16 at 18.)  Plaintiffs have not clearly provided the Court with any details or any clear plan
18 regarding managing the proposed class action.  Plaintiffs simply indicate that Defendant has
19 recorded personal identification information from class members who can be appropriately
20 notified of the action.  (ECF No. 15-1 at 14.)

21 As the Eleventh Circuit has indicated, the manageability assessment is not based on
22 whether the class action will create significant management problems, but rather whether it will
23 create more management problems than the alternative methods.  *Williams v. Mohawk Industries,*
24 *Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009).  The Eleventh Circuit further provided that "if a
25 district court determines that issues common to all class members predominate over individual
26 issues, then a class action will likely be more manageable than and superior to individual
27 actions."  *Williams*, 568 F.3d at 1358.  Here, the Court has determined that the class members are
28

1  alleging the same conduct by Defendant and the same common policy.  The Court found that the
2  issues that the class members share predominate over any individual issues.  Therefore, following
3  the Eleventh Circuit's reasoning, it is likely that a class action will be more manageable than
4  individual lawsuits.
5      Although Plaintiff has failed to provide a clear and detailed explanation of how
6  management of the class members will be handled, manageability of a class alone has rarely
7  prevented certification of a class.  *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586,
8  605 (E.D. Cal. 2008).  The Ninth Circuit, along with at least seven other circuits, has held that
9  there is a presumption against dismissing a class action on manageability grounds or that such
10 dismissals are typically disfavored.  *See In re Live Concert Antitrust Litigation*, 247 F.R.D. 98,
11 148 (C.D. Cal. 2007).[5]  The Eastern District of California indicated that "manageability concerns
12 must be weighed against alternatives and will rarely, if ever, be in itself sufficient to prevent
13 certification of a class." *Campbell*, 253 F.R.D. at 605.  Furthermore, the Eastern District of
14 California provided that even if there are manageability issues present, they are only significant if
15 they "create a situation that is less fair and efficient than other available techniques." *Campbell*,
16 253 F.R.D. at 605.  Given that the class members are all alleging the same claim that Defendant
17 violated Section 1747.08(a)(2) of the California Civil Code, it seems much more efficient (for the
18 parties and the courts) to allow a class action rather than to use other available techniques.
19     There is not sufficient evidence or information to lead the Court to rule against the
20 presumption held by the Ninth Circuit.  The Plaintiffs may not have presented a detailed plan for
21 managing the class action, but at the same time there is no indication that a class action would be
22 less fair or efficient than other methods.  The Court therefore follows the trend of disfavoring
23 dismissal of a class action based on manageability grounds.
24 //
25 //
26
27 [5] Newberg on Class Actions provides that courts within at least seven circuits have held that there is a presumption against dismissing a class action on manageability grounds or that such dismissals are disfavored. These circuits include the Second, Fourth (District Court), Fifth (District Court), Seventh, Eight (District Court),
28 Ninth, and Eleventh Circuit.  *See* Newberg on Class Actions, §4:72 *Four Factor test—Manageability—Overview*.

### IV. CONCLUSION

All four prerequisites of FRCP 23(a) are met, as well as at least one of the requirements of subpart (b), specifically 23(b)(3). Therefore, the class action can be maintained and the Court hereby GRANTS Plaintiffs' Motion for Class Certification.

IT IS SO ORDERED.

Dated: December 23, 2014

Troy L. Nunley
United States District Judge