1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   AMY FRASER and PAULA HAUG, on              No.  2:13-cv-00520-TLN-DB
     behalf of themselves and all others
12   similarly situated,

13                  Plaintiffs,                 **ORDER**

14          v.

15   WAL-MART STORES, INC., a Delaware
     corporation,
16
                    Defendant.
17

18

19          This matter is before the Court on Plaintiffs Amy Fraser and Paula Haug's ("Plaintiffs")

20   Motion for Approval of Class Notice (ECF No. 46) and Defendant Wal-Mart Stores, Inc.'s

21   ("Defendant" or "Wal-Mart") Motion Requesting Decertification of the Class (ECF No. 51)

22   pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").  Both motions are opposed.  (ECF

23   Nos. 52, 53.)  The Court is duly advised of the parties' arguments.  As the issues raised in each

24   motion are closely related, the Court finds it to be in the interest of judicial efficiency to address

25   the motions in a single order.  After careful consideration, and for the reasons set forth below, the

26   Court hereby GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Approval of

27   Class Notice and DENIES Defendant's Motion Requesting Decertification.

28   ///

1

## I.    FACTUAL BACKGROUND

On December 24, 2014, this Court granted Plaintiffs' Motion for Class Certification. (ECF No. 22.)  The Court found that all four prerequisites of Rule 23(a) were met as well as at least one of the requirements of subpart (b), and therefore certified the Class.  (ECF No. 22 at 14.) The Class was certified as follows:

> All persons in California whom Defendant requested and recorded personal identification information in conjunction with a credit card purchase transaction at a California retail store during the period of time beginning January 29, 2012 and continuing through the date of trial.

(ECF No. 22 at 4.)  Defendant filed a petition to appeal the certification order and that petition was denied by the Ninth Circuit on March 25, 2015.  (Mem. of P. & A. Supp. Pls.' Mot. for Approval of Class Notice, ECF No. 46-1 at 1.)

Plaintiffs assert claims under Song-Beverly Credit Card Act of 1971 Section 1747.08(a)(2)[1]  (the "Act" or "Section 1747.08(a)(2)") arising out of Wal-Mart's alleged requesting and recording of customers' ZIP codes in its California retail stores.  (ECF No. 22.) Plaintiffs now move this Court for an order approving Class Notice.  (ECF No. 46.)  Plaintiffs request that notice be achieved through a combination of methods.  (ECF No. 46-1 at 2.)  These methods include the posting of a summary notice at each point of sale in each of Defendant's California stores for a period of sixty (60) days, the creation of a dedicated website that provides the full notice to the Class, and publication of the summary notice by way of a 1/4-page advertisement in the San Francisco and Los Angeles editions of the USA Today.  (ECF No. 46-1 at 2.)  More so, Plaintiffs request the Court to order Defendant to pay for the notice costs relating to the store notice campaign as well as any costs related to newspaper publication.  (ECF No. 46-

---

[1]  The Act, in pertinent part, reads as follows:
(a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following:
(2)  Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.
Cal. Civ. Code § 1747.08(a)(2).

1 at 7.)  Defendant opposes the Motion for Approval of Class Notice.  (ECF No. 52.)

Defendant filed a motion to decertify the Class.  (ECF No. 51.)  Defendant alleges that the record presently before the Court establishes that the Class is not ascertainable, that Defendant did not follow a uniform policy of requesting and recording ZIP codes from all of its credit card customers in California during the proposed class period, and that individual issues predominate over any common issues.  (Mem. of P. & A. Supp. Def.'s Mot. for Decert., ECF No. 51-2 at 1.) Plaintiffs oppose Defendant's Motion Requesting Decertification.  (ECF No. 53.)

## II.   STANDARDS OF LAW

### A.  Class Decertification

Under Rule 23, an order that grants or denies class certification may be altered or amended before final judgment.  Fed. R. Civ. P. 23(c)(1)(C).  "A district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify." *United Steel Workers, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010).  "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 501 (E.D. Cal. 2014) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  "For such an order, particularly during the period before any notice is sent to members of the class, is inherently tentative." *Falcon*, 457 U.S. at 160 (internal quotations omitted).

The standard for class decertification is the same as the standard for class certification. *Arredondo*, 301 F.R.D. at 502.  The legal standard to obtain class certification is found under Rule 23.  A class action may be maintained only if all four prerequisites of Rule 23(a) are met along with at least one of the requirements of subpart (b).  *Blake v. Arnett*, 663 F.2d 906, 912 (9th Cir. 1981).  In deciding whether to certify or decertify a class, a district court "will resolve factual disputes by a preponderance of the evidence and make findings that each Rule 23 requirement is met or is not met, having considered all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3rd Cir. 2008).

///

3

1    B.  Notice

2        For classes certified under Rule 23(b)(3), the court must direct to class members "the best

3    notice practicable under the circumstances, including individual notice to all members who can be

4    identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  California authority generally

5    requires service of class notice by mail or similar reliable means.  *See Chance v. Superior Court*,

6    58 Cal. 2d 275, 290 (1962).  "Individual notice has never been required to be given [to] every

7    member of every class.  Rather, in construing the clear provisions of Rule 23(c)(2), courts have

8    required individual notice to be given to every 'identifiable' class member along with some other

9    form of notice to the unidentified members." *In re U.S. Fin. Sec. Litig.*, 69 F.R.D. 24, 47 (S.D.

10   Cal. 1975).  The procedure must be reasonably certain to reach and inform class members.

11   *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 319 (1950).  The notice must clearly

12   and concisely state in plain, easily understood language:

13            (i) the nature of the action;

14            (ii) the definition of the class certified;

15            (iii) the class claims, issues, or defenses;

16            (iv) that a class member may enter an appearance through an attorney if the

17       member so desires;

18            (v) that the court will exclude from the class any member who requests exclusion;

19            (vi) the time and manner for requesting exclusion; and

20            (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

21   Fed. R. Civ. P. 23(c)(2)(B).  "In exercising the discretionary authority to oversee the notice-

22   giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts

23   must take care to avoid even the appearance of judicial endorsement of the merits of the action."

24   *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).

25   **III.    ANALYSIS**

26       A.  Motion for Class Decertification

27       Defendant moves this Court for an order decertifying the Class.  (ECF Nos. 51, 55.)

28   Alternatively, Defendant asks at a minimum for the Court to redefine the Class.  (ECF No. 55 at

4

1–2.)  Plaintiffs respond that the standards for certification remain met and, therefore, oppose

Defendant's Motion.[2]  (ECF No. 53 at 12.)  Therefore, to determine whether the Class meets the

standards required for certification, the Court will consider whether prerequisites of Rule 23(a)

and (b) are satisfied.

> i.   *Rule 23(a) Requirements*

The four requirements of Rule 23(a) are:

> (a) Prerequisites. One or more members of a class may sue or be sued as
>
> representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or
>
> defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the
>
> class.

The Court will address each prerequisite individually.

> a.   Numerosity

The numerosity requirement is satisfied if the class is so large that joinder of all members

would be impracticable.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Although the numerosity requirement does not focus exclusively on the number of members in

the potential class, case law does suggest that very large numbers may be considered

impracticable.[3]

Here, the Class is defined as all persons in California whom Defendant requested and

---

[2]       Plaintiffs also argue that Defendant's Motion is more appropriately a motion for reconsideration.  (ECF No. 53 at 4–5.)  However, "a motion to decertify a class is not governed by the standard applied to motions for reconsideration, and does not depend on a showing of new law, new facts, or procedural developments after the original decision." *Yeoman v. Ikea U.S.A. West, Inc.*, 2014 WL 7176401, at *5 (S.D. Cal. 2014).  Additionally, the Court has the power to alter or amend the previous class certification order under Rule 23(c)(1), so the Court need not consider whether reconsideration is also warranted under Rule 60(b) or Local Rule 78-230(j).  *See Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 593 n.6 (E.D. Cal.1999).

[3]       The courts provide no strict number, but when a class is very large joinder is typically impracticable.  *See Gen. Tel. Co. of the N.W. v. EEOC*, 446 U.S. 318, 330 (1980) (suggesting 15 is too few); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013) (presuming numerosity at 40); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (same).

1    recorded personal identification information during a credit card transaction.  The size of the

2    Class is estimated to exceed 100,000 individuals.  (Decl. of James M. Lindsay in Supp. of Mot.

3    for Class Certification, ECF No. 15-2 at ¶ 5; ECF No. 53.)  Joinder of this large number of

4    individuals would cause difficulties and inconvenience for the various parties, as well as the

5    Court, and is therefore impracticable.  Defendant does not challenge the numerosity requirement

6    in the instant motion for decertification.  Thus, there is no reason to question the Court's prior

7    holding, and the Court again finds that the numerosity requirement is met.

8                                    b.  Commonality

9         The second prerequisite for class certification is that there must be a common question of

10   law or fact to the class.  Fed. R. Civ. P. 23(a)(2).  The class members must share a "common

11   contention . . . of such a nature that it is capable of classwide resolution--which means that

12   determination of its truth or falsity will resolve an issue that is central to the validity of each one

13   of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[A]ny

14   competently crafted class complaint literally raises common 'questions.'"  *Id.* at 349 (internal

15   citation omitted).  "What matters for purposes of determining commonality and predominance is

16   the presence of common answers."  *Yeoman v. Ikea U.S.A. West, Inc.*, No. 11–cv–00701–BAS

17   (BGS), 2014 WL 7176401, at *6 (S.D. Cal. 2014).  The commonality requirement is generally

18   satisfied where "the lawsuit challenges a system-wide practice or policy that affects all of the

19   putative class members."  *See LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985).

20        Defendant argues that the commonality requirement is not established as Plaintiffs fail to

21   demonstrate and cannot demonstrate that Defendant has a uniform policy of requesting and

22   recording customers' ZIP codes during credit card transactions in its California retail stores.

23   (ECF No. 51 at 1.)  Defendant contends that its Point of Sale ("POS") system is not configured to

24   and therefore does not prompt customers to provide their ZIP code unless that information is

25   necessary to complete the transaction based upon Defendant's agreement with the respective

26   credit card company.  (Pryer Decl., ECF No. 51-5 at 1; Howarter Decl., ECF No. 51-4 at 1–2.)

27   While such information is relevant, it does not eliminate the possibility that Defendant engages in

28   the practice as Plaintiffs allege.  Specifically, Plaintiff Haug claims that her ZIP code was

                                               6

1   verbally requested and manually entered into Defendant's system by a cashier when she used her

2   Visa card.  (Jacobs Decl. Ex. F, ECF No. 51-6 at 35; ECF No. 51-6 at 29.)  As such, the

3   programming of the POS prompts does not disprove this allegation.  Thus, the common question

4   of whether or not customers were requested and required to provide their ZIP code when using a

5   credit card remains.  Further, if such a common practice is proven, then a determination of the

6   Act's applicability to the alleged conduct will resolve all Class claims.  Thus, the commonality

7   requirement is met.

8                                      c.   Typicality

9         The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the

10  representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

11  Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class

12  members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

13  1020 (9th Cir. 1998).

14        Here, the Plaintiffs allege that they experienced the same exposure to Defendant's alleged

15  common practice of requesting and recording customers' ZIP codes when they used credit cards.

16  As alleged, Plaintiffs' claims are typical of the claims of the Class.  Defendant does not challenge

17  the typicality requirement in the instant motion for decertification.  Thus, there is no reason to

18  question the Court's prior holding, and the Court again finds that the typicality requirement is

19  met.

20                                     d.   Representative

21        The final prerequisite under Rule 23(a) is that the representative parties must be able to

22  fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  To make this

23  determination, the Ninth Circuit proposed two questions for a court to ask: "(1) Do the

24  representative plaintiffs and their counsel have any conflicts of interest with other class members,

25  and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on

26  behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

27        As previously found by the Court, there is no evidence of a conflict of interest here

28  between Plaintiffs and the Class.  Furthermore, there is no evidence that Plaintiffs and their

1    counsel will not continue to prosecute the action vigorously.  However, Defendant contends and

2    the Court agrees that, due to Defendant's agreement with American Express, Defendant's practice

3    of requesting costumers' ZIP codes for purchases equal to or greater than $50 made with an

4    American Express card is not a violation of the Act as such practice falls under Section

5    1747.08(c)(3)(A).  (ECF No. 51-2 at 10–11.)  In light of the fact that Plaintiff Fraser's claim

6    against Defendant rests solely on the purchases made with her American Express card, the Court

7    no longer finds her to be an adequate representative for the class.[4]  Plaintiff Haug still satisfies the

8    representative requirement as her claim against Defendant depends upon her allegations that

9    Defendant requested her ZIP code when she used her Visa card.  Since Defendant has not shown

10   evidence of a contractual agreement with Visa that falls under the Section 1747.08(c)(3)(A)

11   exception, the Court finds that Plaintiff Haug still has a sufficient claim against Defendant.

12         Defendant does not challenge the adequacy of representation requirement in the instant

13   motion for decertification.  Thus, there is no reason to question the Court's prior holding, and the

14   Court again finds that the representative requirement is met as to Plaintiff Haug.

15                              e.  Ascertainability

16         "Although not specifically mentioned in Rule 23, plaintiffs must, in addition to showing

17   numerosity, commonality, typicality and adequacy, demonstrate that the members of the class are

18   ascertainable."  *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 564 (C.D. Cal. 2014).  "A class is not

19   ascertainable when the proposed definition includes individuals who were never injured by the

20   defendant's conduct, or if the proposed definition would require the Court to determine whether a

21   person is a member of the class by evaluating the merits of the individual claims."  *Gonzales v.*

22   *Comcast Corp.*, No. 10–cv–01010–LJO–BAM, 2012 WL 10621, at *20 (E.D. Cal. 2012)

23   (citations omitted).  "A class definition should be precise, objective, and presently ascertainable,

24   though the class need not be so ascertainable that every potential member can be identified at the

25   commencement of the action."  *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 544 (E.D. Cal.

26   _____

27   [4]     Additionally, Plaintiff Fraser testified that she has not utilized her Visa card when making a purchase in Defendant's store and, thus, the Court finds that she no longer has a viable claim against Defendant.  (Fraser Decl., ECF No. 53-2 at 3.)

28

2014).  In the Ninth Circuit, "it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description."  *In re ConAgra*, 302 F.R.D. at 566.

Defendant asserts that there is no reliable and administratively feasible way to identify members of the Class.  (ECF No. 51 at 1.)  Further, Defendant contends that its due process right to present every available defense is threatened by the inability to identify members of the Class at the time of certification.  (ECF No. 51-2 at 12.)  However, as previously noted, every potential member need not be identified at the commencement of the action.  Further, as Plaintiffs suggest, it is administratively feasible to have Class members prove their membership with reliable records such as credit card statements and receipts.  (ECF No. 53 at 15.)  Defendant presented evidence to the Court that these records can be cross-referenced against Defendant's records. (Gislason Decl., ECF No. 55-1 at 2–3.)  Therefore, the Court finds the Class is ascertainable and that all the four prerequisites of Rule 23(a) are met.

### ii.    Rule 23(b)

In addition to meeting all the four prerequisites of 23(a), a class action must also meet one of the three requirements of FRCP 23(b).  *Blake v. Arnett*, 663 F.2d 906, 912 (1981).  The Court certified the Class pursuant to Rule 23(b)(3) which states:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### a.    Predominance

The Rule 23(b)(3) predominance test assesses whether proposed classes are "sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  A court should look to the common questions because "when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

9

Defendant argues that Plaintiffs cannot prove that common issues predominate over individual ones or that any questions common to the Class in fact exist.  (ECF No. 51-2 at 18.) Defendant alleges that its defenses will differ depending on the particular circumstances of each Class member's transactions.[5]  (ECF No. 51-2 at 19.)  Therefore, Defendant claims that an individualized inquiry into each transaction will be required.  (ECF No. 51-2 at 19.)  As previously discussed, the Court finds that there are questions common to the Class.  Additionally, the variability of the defenses do not predominate the common question of whether or not customers were requested and required to provide their ZIP code when using a credit card. Further, the defenses will be common to the Class as a whole as the defenses are based on exceptions listed under the Act.  Therefore, the Court finds that the first part of Rule 23(b)(3) is met.

### b. Superiority of Class Action

Resolution of the claims of an estimated 100,000 Class members in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. Therefore, the Court finds that this requirement of Rule 23(b)(3) is satisfied.

As all four prerequisites of Rule 23(a) are met, as well as at least one of the requirements of Rule 23(b), the Court finds that the Certification of the Class remains proper.

### B.  Notice

Plaintiffs move this Court for approval of Class Notice.  (ECF No. 46 at 2.)  Defendant responds that Plaintiffs' proposed notice plan would be over-inclusive, damage Defendant's business and reputation, and violate Defendant's rights under the First Amendment.  (ECF No. 52 at 2.)  Additionally, Defendant opposes Plaintiffs' request that the Court order Defendant to pay for the notice costs relating to the store notice campaign as well as any costs related to newspaper publication.  (ECF No. 52 at 2.)

Both the form and content of the notice must be adequate to be approved by the courts.

---

[5]     Defendant contends that the Act allows for the collection of Personal Identification Information ("PII") when the merchant is contractually obligated to provide PII to the credit card company or when PII is required for a "special purpose" such as the sale of prescription drugs or firearms.  (ECF No. 51-2 at 19.)  Additionally, Defendant asserts that only consumer credit card holders can bring a claim under the Act, and thus, it will have a defense against any claim brought by a business credit card holder.  (ECF No. 51-2 at 20.)

1    *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 452 (E.D. Cal. 2013.)  As such, the Court

2    will look at each in turn to determine whether approval of the notice plan is appropriate and then

3    address the issue related to costs.

            *i.     Content*

5            Here, the proposed notice of class action plainly lays out for the reader what the case is

6    about and the Class definition.[6]  (Lindsay Decl. Ex. H, ECF No. 46-8 at 5.)  Furthermore, the

7    proposed notice states what options an individual has, including entering an appearance through

8    an attorney if the member so desires, requesting an exclusion from the Class with instructions on

9    how to do so, and how to obtain more information concerning the lawsuit.  (ECF No. 46-8 at 5.)

10   Additionally, it specifies the binding effect of a Class judgment on members under Rule 23(c)(3).

11   (ECF No. 46-8 at 5.)  The Court is satisfied that the content of the proposed notice meets the

12   requirements of Rule 23(c)(2)(B).

13           However, the Court finds that some changes to Plaintiffs' proposed class notice are

14   necessary to meet the clear, concise, and neutral standards required by law.  In the interest of

15   neutrality and clarity, the section concerning what the case is about shall be modified as follows:

>           The Class Action is about whether Wal-Mart requested and
>           recorded personal identification information from customers who
>           paid for merchandise with a credit card at its retail stores located in
>           California.  The lawsuit claims that Wal-Mart violated California
>           Civil Code § 1747.08 by requesting and recording ZIP codes from
>           customers who paid for merchandise with a credit card at its retail
>           stores located in California.  The Court has not determined whether
>           the Class or Wal-Mart is right.  The lawsuit seeks money or other
>           benefits for the Class members.  There is no money available now
>           and no guarantee that any money will be awarded.  The Class,
>           through Class Counsel and the appointed Class Representatives,
>           will have to prove its claims at trial.  Trial has been set to occur on
>           [insert trial date].[7]

---

[6]      In discussing the sufficiency of the Notice's content, the Court refers only to the full notice proposed by Plaintiffs (Lindsay Decl. Ex. H, ECF No. 46-8 at 5) and not to the content of Plaintiffs' proposed summary notice or the content included on the proposed website (Lindsay Decl. Ex. I, ECF No. 46-9 at 2, 6–7.).  The latter content shall be modified to reflect the modifications made by the Court.

[7]      The relevant section previously read as follows:

>           The lawsuit claims that Wal-Mart violated California Civil Code § 1747.08 by
>           requesting and recording ZIP codes from customers who paid for merchandise
>           with a credit card at its retail stores located in California.  The lawsuit seeks
>           money or other benefits for the Class members.  Wal-Mart denies allegations of
>           wrongdoing and denies that any Class member is entitled to any relief.  The
>           Court has not determined whether the Class or Wal-Mart is right.  There is no

1

        *ii.*    *Method*

2

      The methods proposed include the publication of the summary notice by way of a 1/4-

3

page advertisement in the San Francisco and Los Angeles editions of the USA Today, the

4

creation of a dedicated website that provides the full notice to the Class, and the posting of a

5

summary notice at each point of sale in each of Defendant's California stores for a period of sixty

6

(60) days, the creation of a dedicated website that provides the full notice to the Class.  (ECF No.

7

46-1 at 2.)

8

                  a.  <u>Newspaper Publication</u>

9

      Defendant does not oppose newspaper publication as a method of notice but does

10

challenge the content of the summary notice.  (*See* ECF No. 52 at 2–3.)  The Court agrees that

11

newspaper publication is a practicable method and that the summary notice does not include the

12

required information as set forth in Rule 23(c)(2)(B).  Therefore, the Court finds it reasonable to

13

publish the full notice as amended by the Court.

14

                  b.  <u>Website</u>

15

      Defendant does not oppose the utilization of a website as method of notice or source of

16

information.  (*See* ECF No. 52.)  The inclusion of a website in a class notice is approved by the

17

Federal Judicial Council and has been previously found to be proper by this Court.  *Adoma v.*

18

*University of Phoenix, Inc.*, No. CIV. S–10–0059 LKK/GGH, 2010 WL 4054109, at *3 (E.D.

19

Cal. 2010).  Thus, the Court finds use of a website practicable and proper but orders the content

20

amended to reflect the Court's modification to the content as set forth *supra*.

21

                  c.  <u>In-Store</u>

22

      Defendant opposes notice at each point of sale location.  (ECF No. 52 at 2, 6–11.)

23

Defendant contends that notice at each point of sale location is likely to cause confusion and

24

would encourage inquiries by non-class members, which could interfere with Defendant's

25

reputation and business.  (ECF No. 52 at 9.)  The Court agrees and finds such a method is not

26

_____

27

money available now and no guarantee that any money will be awarded.  The
Class, through Class Counsel and the appointed Class Representatives, will have
to prove its claims at trial.  Trial has been set to occur on November 9, 2015.

28

(ECF No. 46-8 at 5.)

1    practicable and not supported by law.  *Yeoman v. Ikea U.S. West, Inc.*, No. 11cv701 WQH (BGS),

2    2013 WL 5944245, at *4 (S.D. Cal. 2013).  The Court finds that posting notices at each point of

3    sale is not practicable under the circumstances, and is therefore not required by Rule 23. Fed. R.

4    Civ. P. 23(c)(2)(B).

5              However, Plaintiff also suggests notice be placed at the customer service counter at each

6    retail location.  (ECF No. 46-2 at 4.)  The *Yeoman* court found that posting a notice at the

7    customer service desk at each of the defendant's retail stores in California to be practicable, and

8    Defendant here cites that court's reasoning in its argument against point of sale notice (ECF No.

9    52 at 11), the Court finds this method to be practicable under the circumstances as well.  *Yeoman*,

10   2013 WL 5944245, at *6.

11                        *iii.*      *Cost*

12             Plaintiffs request that Defendant bear the cost of the proposed store notice and newspaper

13   publication.[8]  (ECF No. 46-1 at 6.)   Defendant opposes this request, and contends the Plaintiffs

14   must bear the cost of notice since there has been no decision on the merits which would warrant

15   cost shifting.  (ECF No. 52 at 12–14.)

16             "The usual rule is that a plaintiff must initially bear the costs of notice to the class."  *Hunt*

17   *v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1143 (9th Cir. 2009) (quoting *Eisen v. Carlisle*

18   *& Jacquelin*, 417 U.S. 156, 178 (1974)).  "A party must bear the burden of financing his own

19   suit."  *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 356 (1978) (internal quotations omitted).

20   However, "interim litigation costs, including class notice costs, may be shifted to defendant after

21   plaintiff's showing of some success on the merits, whether by preliminary injunction, partial

22   summary judgment, or other procedure."  *Hunt*, 560 F.3d at 1143.

23             At this stage in the proceedings, Plaintiffs have not demonstrated a showing of success on

24   the merits of their claim.  Accordingly, the Court finds that all costs of notice shall remain with

25   Plaintiffs.

26   ///

27   ///

28   _____
[8] Plaintiffs agree to bear the cost of the website Class Counsel created.  (ECF No. 46-1 at 6.)

13

**IV.     Conclusion**

For the foregoing reasons, Defendant's Motion Requesting Decertification is hereby DENIED (ECF No. 51) and Plaintiffs' Motion for Approval of Class Notice is hereby GRANTED in part and DENIED in part (ECF No. 46).  Plaintiff Fraser is removed as a Class Representative.

IT IS SO ORDERED.

Dated: October 21, 2016

Troy L. Nunley
United States District Judge

14